The Honorable Samuel J. Steiner
Chapter 7
Hearing Date: June 26, 2009
Hearing Time: 9:30 a.m.
Hearing Location: Seattle, WA

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

IN RE:

Rupanjali Snowden,

Debtor(s).

Case No. 09-10318-SJS

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(k)(1)

COMES NOW Debtor Rupanjali Snowden ("Debtor"), by and through her attorneys Seattle Debt Law LLC, and replies to Check Into Cash's ("Respondent") Response to Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay as follows:

### I. Check Into Cash received notice of Debtor's bankruptcy in January 2009.

Respondent asserts that the Debtor's Motion for Sanctions was the first time it received notice of Debtor's bankruptcy. However, as set forth in her Motion, the Debtor listed Check Into Cash as a creditor on Schedule F when she filed her voluntary petition on January 16, 2009, and on January 22, 2009, the Bankruptcy Court mailed a Notice of Chapter 7 Bankruptcy Case to Check Into Cash. *Motion* at ¶1.1-1.6. Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed. *In re Pyle*, 201 B.R. 547, 550 (Bankr. E.D.

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1) (09-10318-SJS) - 1

SEATTLE DEBT LAW, LLC
705 SECOND AVE., SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB   Doc 34   Filed 06/23/09   Ent. 06/23/09 19:09:31   Pg. 1 of 9

Cal. 1996), citing *Hagner v. United States*, 285 U.S. 427 (1932). Here, the bankruptcy court clerk's certificate of mailing created a presumption that Respondent received notice of Debtor's bankruptcy filing shortly after January 22, 2009—nearly a month before they cashed the Debtor's post-dated check on February 20, 2009—and Respondent has failed to overcome that presumption. Moreover, there is no indication that the address listed on Schedule F is incorrect. The address on the matrix is the local branch where Debtor transacted all her business with Respondent and it matches the address on Check Into Cash's own website, attached hereto as **Exhibit A**.

### II. The letter and spirit of the Bankrupcy Code, as well as existing Ninth Circuit caselaw, does not support an exception to the automatic stay for the postpetition presentment of a postdated, prepetition check by a payday lender.

Respondent states that "Courts have repeatedly held that presentment of a prepetition check after a debtor files for bankruptcy does not violate the automatic stay." *Response* at 3. In support of this contention, Respondent cites a line of cases from the Sixth Circuit and one case from the Eleventh Circuit. These cases, which culminated in the 2008 *In re Meadows* decision, are not controlling in the Ninth Circuit and are contrary to the purposes of the automatic stay. *See In re Meadows*, 379 B.R. 737, 743 (Bankr. S.D. Ohio 2008); *In re Blasco*, 3352 B.R. 888, 894 (Bankr. N.D. Ala. 2006); *In re Thomas*, 317 B.R. 776, 779 (B.A.P. 6th Cir. 2004); *In re Franklin*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000). This Court is not bound by these misguided precedents and should decline to follow them.

The Ninth Circuit has not yet resolved the issue of whether a payday lender may, post-petition, present a post-dated check as payment for a prepetition loan. The confusion stems from § 362(b)(11)'s exception to the automatic stay for the presentment of a negotiable instrument: "The filing of a petition does not operate as a stay, under subsection (a) of this section, of the presentment of a negotiable instrument." 11 U.S.C. § 362(b)(11). The apparent purpose of this exception is to "insure the efficiency of the United States check processing system, to protect the

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF
THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1)
(09-10318-SJS) - 2

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE,.SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 2 of 9

stream of commerce, and to provide protection to banks processing checks because there is no way that financial institutions can ascertain the bankruptcy status of the numerous people whose checks are processed each day." *Meadows*, 379 B.R. at 743 n.8. The fundamental problem with the reasoning in cases cited by Respondent, including the BAP opinion in *Meadows*, is that they turn an exception intended to protect financial institutions into a *carte blanche* for payday lenders to violate the automatic stay. S*ee In re Jastrem*, 224 B.R. 125 (Bankr. E.D. Cal. 1998), *affirmed by American Law Ctr. PC v. Stanley (In re Jastrem),* 253 F.3d 438 (9th Cir. Cal. 2001) ("The exception for negotiable instruments is not intended to give the holder of an instrument made by debtor, such as a check, the right to enforce it against the debtor or the debtor's bank account after the debtor has filed a bankruptcy petition. Rather, presentment of an instrument is often a prerequisite to asserting remedies against secondary obligors").

A post-dated check cashed post-petition by a payday lender presents a unique situation in bankruptcy and thus it is essential for this Court to consider the mechanics of a payday loan transaction. According to information from Respondent's website, attached hereto as **Exhibit B**, a customer seeking a payday loan from Check Into Cash provides a post-dated check for the amount of the loan, plus the payday loan fee. *Exhibit B*. The check is held until the customer's next payday. *Id.* Then, on the date of that next payday, the standard procedure is for the customer to come to the Check Into Cash branch and pay off the loan in person. *Id.* Check Into Cash typically does not "force deposit" of the post-dated check written by the customer, unless "required by state law." *Id.* In fact, even though the website claims a payday loan is unsecured, *Exhibit B*, Lauren Hosie's own declaration in support of Check Into Cash's response states that when Respondent made a loan to Debtor, it "accepted a post-dated check as security for [the] loan." *Declaration of Lauren Hosie* at ¶ 2.

In essence, while the check itself is a negotiable instrument, and at first blush seems to fall under 362(b)(11), it is in reality collateral for the underlying loan obligation. By presenting

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF
THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1)
(09-10318-SJS) - 3

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE., SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 3 of 9

the check postpetition—that is, realizing on its collateral—Respondent not only violated Section 362(a)(6)[1], but also arguably violated 362(a)(3),(a)(4), and/or (a)(5).[2]

Additionally, the Debtor urges this Court to follow the reasoning in an analogous line of Ninth Circuit cases dealing with bankruptcy retention agreements. *See Jastrem*, 224 B.R. 125; *In re Hines*, 147 F.3d 1185 (9th Cir. 1998); *In re Zapanta*, 204 B.R. 762, 764 (Bankr. S.D. Cal. 1997); *In re Hessinger*, 165 B.R. 657 (Bankr. N.D. Cal. 1994). These cases present nearly identical fact patterns: as part of a bankruptcy retainer agreement, a debtor would give his attorney postdated checks in exchange for prepetition legal services, and the attorney subsequently attempted to present the checks postpetition. *Jastrem*, 224 B.R. at 126; *Hines*, 147 F.3d at 1186; *Hessinger*, 165 B.R. at 658. In each of these cases, the court flatly rejected the attorneys' practice of using postdated checks to collect prepetition fees when the checks were received prepetition but presented postpetition. *See Jastrem*, 224 B.R. at 128. As the court explained in *Hessinger*, "The taking of a postdated check by an attorney for a bankruptcy fee is a credit transaction....Presentment of the check for payment is an act to collect a prepetition debt, and is accordingly unlawful." 165 B.R. at 658. While the factual context of these cases is distinct from the present case, the Debtor contends that the courts' reasoning regarding postpetition presentment of postdated checks for prepetition services is an apt comparison to Respondent's postpetition presentment of the Debtor's postdated check for prepetition payday loan. Thus, the Debtor asks that this Court extend the reasoning presented in *Jastrem, Hessinger, Zapanta and Hines* and hold that a payday lender violates the automatic stay when it presents postpetition a postdated check for a prepetition debt. This holding would comport with the policies espoused

---

[1] Which stays any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

[2] Which stay, respectively, any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; any act to create, perfect, or enforce any lien against property of the estate; and any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case.

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1) (09-10318-SJS) - 4

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE,.SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 4 of 9

by the Ninth Circuit as well as with the purpose of the Bankruptcy Code's automatic stay—relieving debtors from the stress of their prepetition debts and giving them a fresh start postpetition.

### III. A debt that is subject to discharge, even if not discharged at the time of presentment, falls outside of the protections of 362(b)(11).

Even if this Court disregards the foregoing analysis and holds that a payday lender like Check Into Cash may utilize the 362(b)(11) exception, Respondent still violated the stay because it fails to meet the requirements of 362(b)(11). As stated in the Motion, for 362(b)(11) to apply, there must be a "negotiable instrument" and "presentment" of that instrument. *In re Hines*, 198 B.R. 769, 772-73 (B.A.P. 9th Cir. Cal. 1996). There cannot be presentment where dischargeability of a debt is a defense. *Id.*

Respondent contends that Debtor's argument has two "fatal flaws." *Response* at 4. First it asserts, once again citing non-controlling caselaw, that a debtor may not use the defense of discharge under RCW § 62A.3-205(a)(1) if the debt has not yet been discharged. However, in the Ninth Circuit, the fact that discharge has not yet been entered does not change the fact that the debt was always "subject" to discharge under Section 727(b) of the Bankruptcy Code. *Zapanta*, 204 B.R. at 764. In the present case, Debtor's pre-petition debt with Check Into Cash was always subject to discharge. *See id.* Therefore, she could present the defense of discharge in response to Respondent's attempted presentment of her post-dated check. *See id.*

Second, Respondent argues that the Ninth Circuit has overruled *In re Hines*, and that other courts have "roundly criticized" the *Hines* decision. *Response* at 4. As to the latter, the only courts to criticize the decision are out of circuit. *See, e.g., Thomas v. Money Mart Fin. Servs. (In re Thomas)*, 428 F. 3d 735 (8th Cir. 2005). As to the former—the status of *Hines* in our own Circuit—the Ninth Circuit Court of Appeals' reversal and remand of the BAP's decision pertains only to the issue of whether a creditor can cash a post-dated check post-petition to recover fees for *post-petition* services. *Hines*, 147 F.3d at 1188; *see Jastrem*, 224 B.R. at 130 ("Nothing in *Hines*

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF
THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1)
(09-10318-SJS) - 5

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE., SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 5 of 9

permits post-petition payment for services rendered pre-petition"). As the Court in *Hines* specifically stated,

> It must be remembered that [the creditor in this case] is not seeking to recover fees for his prepetition legal services. As we have recently observed [in *Hessinger*], the debts at issue in this case--debts arising from the provision of pre-petition legal services are dischargeable in a bankruptcy proceeding [under Section 727]. And any attempt to collect unpaid fees for such prepetition services would be an "act to collect a claim against the debtor that arose before" the petition was filed, and hence would violate Section 362(a)(6)'s automatic stay.

*Hines*, 147 F.3d at 1188. There is no indication that the Court of Appeals overruled the BAP's holding that an act falling within 362(b)(11)'s exception to the stay must be a "negotiable instrument" and must be "presented." *See Hines*, 198 B.R. at 772.

### IV. <u>Debtor's request for damages is not unreasonable.</u>

Respondent implies that the Debtor did nothing to stop Check Into Cash from cashing the check and subsequently made an "exorbitant" demand for money without any basis whatsoever. This allegation ignores the facts leading to this Motion. Moreover, Respondent misstates the caselaw with regards to emotional distress damages.

### A. <u>Debtor attempted to prevent and to mitigate her damages.</u>

First, Debtor tried to prevent the presentment of the check by submitting a stop-payment order with her bank in November 2008. *Motion* at ¶1.5. Nevertheless, the bank did nothing to stop the presentment and refused to help her after the check was cashed. *Id.* at ¶1.11. She also notified Check Into Cash that she was planning to file for bankruptcy, *Declaration of Lauren Hosie* at ¶3, and listed the address of her local branch in her bankruptcy schedules. *Motion* at ¶1.2.

As soon as she found out the check had been presented, the Debtor went to her local branch of Check Into Cash to request that they refund the money. *Motion* at ¶1.9. They did not do so. *Motion* at ¶1.12. Therefore, her attorneys sent demand letters to Respondent, at both the local

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF
THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1)
(09-10318-SJS) - 6

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE., SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 6 of 9

branch address and the customer service address in Cleveland, Tennessee listed on Respondent's website, setting out the relevant case law and requesting they return the money to Debtor. *Declaration of Camille Nightingale*, filed concurrently herewith, at ¶2. Only when the Debtor received no response to these letters did she file the current Motion.

### B. Respondent's settlement offer did not include any damages for emotional distress and thus Debtor was entitled to decline it.

When Respondent made a settlement offer of $1445 in May 2009 in response to the Motion, Debtor refused it because she is entitled to damages for the emotional distress. Her attorneys explained this to Respondent's attorneys and stated that the Debtor would consider any reasonable offer that included some damages for the distress suffered by the Debtor. *Supplemental Declaration of Christina Latta Henry*, filed concurrently herewith, at ¶ ¶ 2-3. However, Respondent did not make another offer.

As Respondent correctly notes, the Ninth Circuit allows emotional distress damages as part of the "actual damages" recoverable for a stay violation under 362(k). *In re Dawson*, 390 F. 3d 1139, 1148-49 (9th Cir. 2004). Such damages are available if the individual provides clear evidence to establish that significant harm occurred as a result of the violation. *Id.*

Respondent attempts to downplay Debtor's emotional distress damages by asserting that her distress was caused by the "anxiety and pressures inherent in the bankruptcy process." *Response* at 6. It states without any basis or supporting references that a "reasonable person in her circumstances would not suffer such significant emotional harm," and dismisses the Debtor's declaration that she had to tell her child she could not afford to buy her tennis shoes and a haircut. *Id.* However, what Respondent fails to mention is that in the *Dawson* case, the Ninth Circuit Court of Appeals specifically endorsed a case factually similar to the case at bar a Debtor was forced to cancel her son's birthday party because her checking account had been frozen as an example of circumstances that "make it obvious that a reasonable person would suffer significant

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1) (09-10318-SJS) - 7

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE., SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 7 of 9

emotional harm." *Dawson*, 390 F. 3d at 1150, citing *United States v. Flynn (In re Flynn),* 185 B.R. 89, 93 (S.D. Ga. 1995) (awarding Debtor $5,000 in emotional distress damages even thought the stay violation was "brief and not egregious"). The Debtor is not required under *Dawson* to submit corroborating medical evidence or third party testimony; those are merely examples of ways to establish the extent of the emotional distress. *Id.* Respondent does not explain why the Debtor's panic after finding out the check had been cashed, her physical illness and depression and sense of hopelessness all set out in Debtor's own sworn declaration are not sufficient to establish at least a token amount of emotional distress damages. Indeed, comparable cases have awarded at least several thousand dollars for similar distress. *See McLaughlin*, 2007 Bankr. LEXIS 3857 at *20-23; *Flynn,* 185 B.R. at 89.

Furthermore, by Respondent's own admission, its collection department contacted the Debtor "at least 16 times" between January 21, 2009 and February 12, 2009 *after* she had filed her bankruptcy petition. *Declaration of Lauren Hosie* at ¶7. Because it is presumed that Respondent received notice of the bankruptcy shortly after January 22, 2009, *supra* at Page 1-2, these repeated collection calls are arguably a separate stay violation, but at a minimum support the Debtor's claim of emotional distress. *See In re McLaughlin*, 2007 Bankr. LEXIS 3857 at *20-23 (awarding $6,000 in emotional distress damages for a creditor's continuing contact with debtors after debtors had attempted to create a "breathing space" for themselves by filing a Chapter 7 petition); *Eskanos & Adler, P.C. v. Leetien*, 309 F. 3d 1210, 1214-15 (9th Cir. 2002) ("Consistent with the plain and unambiguous meaning of the statute, and consonant with Congressional intent, we hold that §362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions").

C. **Debtor's request for bank fees related to Respondent's action are based on the bank statements she submitted to the Court and to Respondent.**

Respondent next disputes the number of overdraft charges related to its presentment of the postdated check on February 20, 2009. The Debtor previously submitted her bank statements

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF
THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1)
(09-10318-SJS) - 8

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE,.SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 8 of 9

to the Court. Upon careful review, it appears that Respondent's action caused eight overdraft charges between February 20 and February 25 at $37.50 each (totaling $300) and two returned check charges at $37.50 each (totaling $75), for a combined total of $375.

### D. Debtor has not made an unreasonable demand for attorney fees.

Finally, Respondent asserts that the Debtor's demand for attorney fees is "inappropriately expansive." *Motion* at 7. It does not explain to what demand it is referring; Debtor has not yet made a specific demand for attorney fees, though she did reject Respondent's settlement offer of $1,500, of which $720 was for attorney fees. This rejection was perfectly reasonable. The Motion and this Reply presented novel questions of law in this Circuit, which required substantial research and preparation, and the Court has wide discretion in determining an award of attorney fees. *Dawson*, 390 F. 3d at 1149-501152-53; *Leichty v. Neary (In re Strand)*, 375 F. 3d 854, (9th Cir. 2004).

### V. Conclusion

WHEREFORE, for the reasons set forth in the foregoing and in the supporting Declarations, Exhibits and Authorities, as well as in the Motion and its supporting Declarations, Exhibits and Authorities, the Debtor respectfully requests that this Court grant her motion for sanctions against Check Into Cash.

DATED this 23rd day of June, 2009.

SEATTLE DEBT LAW, LLC

By: */s/ Camille V. Nightingale*
Camille V. Nightingale, WSBA #40850
Christina Latta Henry, WSBA #31273
Attorneys for Debtor

REPLY TO CHECK INTO CASH'S RESPONSE TO DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(K)(1) (09-10318-SJS) - 9

**SEATTLE DEBT LAW, LLC**
705 SECOND AVE,.SUITE 501
SEATTLE, WASHINGTON 98104
telephone (206) 324-6677
fax (877) 562-5148

Case 09-10318-MLB    Doc 34    Filed 06/23/09    Ent. 06/23/09 19:09:31    Pg. 9 of 9