**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 7 |
| RUPANJALI SNOWDEN, | No. 09-10318 |
| Debtor. | **DECISION ON MOTION FOR SANCTIONS** |

Debtor Rupanjali Snowden has moved for sanctions against Check Into Cash ("CIC"), from whom she got a prepetition payday loan. I conclude that CIC willfully violated the automatic stay of § 362 of the Bankruptcy Code[1] when it initiated a post-petition electronic transfer from Snowden's bank account based on information from the post-dated check she gave CIC when she got the loan.

The § 362(b)(11) exception to the stay for the presentment of negotiable instruments does not protect CIC, because the electronic transfer was not a "presentment" under the UCC. I will set an evidentiary hearing to establish damages under § 362(k)(1).

This memorandum sets forth the basis of my oral ruling in more detail.

---

[1] Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, "FRCP" and "FRE" refer to the Federal Rules of Civil Procedure and of Evidence, respectively. "RCW" refers to the Revised Code of Washington, and "UCC" to the Uniform Commercial Code as enacted by Washington, RCW Title 62A.

## I. FACTS

CIC made a payday loan to Snowden on 15 November 2008. The transaction was documented on CIC's form Consumer Loan Agreement, and she gave it her check no. 2740, dated "12/1/2008," for $575 as "security" for the loan, repayment of which was due 1 December 2008 (see Exhibit A to Declaration of Eric Ratcliff). As indicated on Exhibit A to her declaration, Snowden ordered her bank to stop payment on 26 November 2008, and on that date she also advised the employees of CIC's Sequim, Washington, office that she intended to file bankruptcy.

CIC contacted Snowden and her attorney numerous times between 26 November and 30 December 2008 to ascertain if she had filed bankruptcy. According to the declaration of Lauren Hosie, associate general counsel for CIC, it also contacted an unspecified "bankruptcy hotline" to see if a bankruptcy had been filed. On 3 January 2009, the Sequim office of CIC sent Snowden's delinquent account to its corporate collections department.

Snowden filed her chapter 7 petition on 16 January 2009, listing CIC as an unsecured creditor with a claim of $575 on Schedule F. On 22 January 2009 the clerk mailed (via the Bankruptcy Noticing Center) the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines (the "Notice") to all parties on the official mailing matrix, which included CIC at its Sequim address. According to Hosie, CIC's collection department attempted to contact Snowden at least 16 times between 21 January and 12 February 2009 to discuss payment of her delinquent account; it is unclear whether contact was made. In any event, according to Hosie, Debtor did not advise CIC of her bankruptcy filing during this period.

On 19 February 2009, CIC acted to enforce the Consumer Loan Agreement, which provides in part:

> [t]he [postdated] Check is both security and payment for your obligations under this Agreement. We may negotiate the Check on the Payment Date or thereafter if you have not paid us in cash or other immediately available funds . . . .

and

> [w]hen you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic funds transfer from your account or to process the payment as a check transaction.

CIC opted for an electronic funds transfer, and the transaction caused Snowden's account to be overdrawn, resulting in a number of overdraft charges. She had to borrow to pay those fees, and had to tell her daughter she could not afford to buy tennis shoes for her as promised or pay for a haircut. Snowden declares that she suffered mental and physical distress as a result.

Hosie states she has been unable to locate any documents indicating that CIC received actual notice of Debtor's bankruptcy before it acted to enforce the Agreement, and that CIC's collections department received the Notice of the Debtor's bankruptcy on 14 April 2009. Snowden says employees of CIC's Sequim office advised her on 21 February 2009 that they had received the Notice and forwarded it to CIC's corporate offices.

Upon learning of the bankruptcy filing, CIC offered to refund Debtor the amount of her check, pay $150 in bank fees charged to her as a result of presentment of the check, and $720 of her attorney's fees, a total of $1,445. Snowden rejected this offer, and countered with a substantial demand; no settlement was reached.

Snowden now seeks an order declaring that CIC willfully violated the automatic stay. She requests return of the funds obtained by CIC

and actual damages, including bank charges and her attorney's fees and costs, and punitive damages under § 362(k)(1). Alternatively, she requests avoidance of the transfer as an unauthorized post-petition transfer under § 549.

At the initial hearing I requested supplemental briefing, which the parties provided, and at a further hearing they stipulated that there are no factual issues on the question of violation of the stay or not.

## II. JURISDICTION

This is a core proceeding within this court's jurisdiction. 28 U.S.C. § 1334(a) and (b), and 157(a) and (b)(2)(O); LGR 7, part I, Local Rules, W.D. Washington.

## III. ISSUE

Did CIC willfully violate the automatic stay of § 362(a)?

## III. DISCUSSION

**A. <u>Willful Violation</u>?**

Section 362(a) stays the commencement or continuation of an action to recover a pre-petition claim against a debtor. It provides in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . .

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

And § 362(k) creates a private right of action for willful violations of the automatic stay, providing:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

A party willfully violates the stay when it knows of the automatic stay and its actions in violation are intentional. Eskanos, 309 F.3d at 1215; In re Ozenne, 337 B.R. 214, 220 (9th Cir. BAP 2006). No specific intent to violate the stay is required; a good faith belief that the stay is not being violated is not relevant to the inquiry into willfulness, or to the award of damages. In re Peralta, 317 B.R. 381, 389 (9th Cir. BAP 2004); Ozenne, 337 B.R. at 221. A creditor has an affirmative duty to discontinue any post-petition collection actions, Sternberg v. Johnston, 582 F.3d 1114, 1119 (9th Cir. 2009); Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213-14 (9th Cir. 2002), and exceptions to the automatic stay are strictly construed. Hillis Motors, Inc. v. Hawaii Auto. Dealers Ass'n, 997 F.2d 581, 590 (9th Cir. 1993).

Although CIC asserted in its initial response to the motion that it had no actual notice of Snowden's bankruptcy filing when it enforced the agreement, the Bankruptcy Noticing Center's affidavit of mailing indicates the Notice of Bankruptcy was mailed to CIC at its branch office in Sequim on 22 January 2009.

Mail properly addressed, stamped, and deposited in an appropriate receptacle creates a rebuttable presumption of its receipt:

> A presumption of receipt is established by showing of proper mailing. Lewis v. U.S., 144 F.3d 1220, 1222 (9th Cir. 1998); In re De la Cruz, 176 B.R. 19, 22 (9th Cir. BAP 1994). Mere

denial of receipt is insufficient to rebut the presumption;
    clear and convincing evidence is required. In re Bucknum, 951
    F.2d 204, 206-07 (9th Cir. 1991).

In re State Line Hotel, Inc., 323 B.R. 703, 709 (9th Cir. BAP 2005), vacated as moot, 242 Fed. Appx. 460 (9th Cir. 2007) (plan confirmed, all assets distributed, and final decree entered while appeal to that court pending). Service by mail is complete upon mailing. Rule 7005; FRCP 5(b).

Moreover, it is undisputed that Snowden had informed CIC employees that she intended to file bankruptcy, and CIC contends that it followed up by contacting Snowden, her counsel, and the court several times before taking enforcement action. It provides no specifics regarding any contact with the court, nor does it claim to have made any formal inquiry or docket search.

CIC does not dispute that it acted intentionally, and under the mailbox presumption, which CIC has not rebutted or even challenged, CIC is presumed to have received the notice. As CIC's enforcement action was collection of a prepetition debt, the elements of a willful stay violation are met.

**B.  Exception?**

The automatic stay does not apply to:

   [t]he presentment of a negotiable instrument and the giving of
   notice of and protesting dishonor of such an instrument.

§ 362(b)(11). To avail of this exception, the creditor must establish that it presented a negotiable instrument. In re Hines, 198 B.R. 769, 772 (9th Cir. BAP 1996), reversed on other grounds, 147 F.3d 1185 (9th Cir. 1998).

09-10318 (Rupanjali Snowden)
DECISION ON MOTION FOR SANCTIONS - 6 of 12

Case 09-10318-MLB    Doc 77    Filed 12/10/09    Ent. 12/10/09 15:35:22    Pg. 6 of 13

**1. Presentment**

Washington's UCC defines "presentment" in RCW § 62A.3-501(a) as "a demand made by or on behalf of a person entitled to enforce an instrument . . ." and RCW § 62A.3-501(b)(1) provides:

> Presentment may be made at the place of payment of the instrument and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance is received by the person to whom presentment is made; and is effective if made to any one of two or more makers, acceptors, drawees, or other payors.

RCW § 62A.4-110(a) provides in relevant part:

> presentment of an item may be made by transmission of an image of an item or information describing an item ('presentment notice') rather than delivery of the item itself.

Under the Agreement, Snowden authorized CIC to use information from her check to make a one-time electronic funds transfer from her account or to process the payment as a check transaction. CIC chose the former. The declaration of Pawel Blaz, Manager of Marketing for Gulf Management Systems, Inc. ("GMS"), the third party service provider CIC uses for electronic, or automatic clearing house ("ACH"), transactions sets out how GMS handles ACH transactions generally, and how the CIC-Snowden transaction was handled in particular. A primer on ACH transactions, the source of the capitalized terms in this section, is an exhibit to the supplemental declaration of CIC's counsel.

GMS uses Affirmative Technologies, Inc., ("ATI"), for internet service, allowing its customers to initiate ACH transactions by entering the necessary information into an online electronic form. ATI uses that information to create an ACH entry for each transaction, which it transmits to GMS. GMS combines the ACH entries into a single file,

which it transmits to the Originating Depository Financial Institution (the "ODFI").

A debit transaction is initiated when the Originator, here CIC, transmits a debit entry to the ODFI, in this case Mercantile Bank. The ACH debit entry is the electronic record containing the information necessary to transfer funds out of the Receiver's (Snowden's) account. The debit entry CIC used was a Prearranged Payment and Deposit ("PPD") which requires the consumer to have granted the Originator authority to initiate a charge to her account. CIC has submitted a copy of the electronic record summarizing the ACH transaction involving Debtor. Ex. B to Ratcliff declaration; a copy is attached as Exhibit A to this Decision.

CIC's ACH transactions are processed by a private operator, the Electronic Payment Network ("EPN"). In this instance, according to the Blaz declaration, after receiving from Mercantile Bank the PPD containing information from Snowden's check, EPN transmitted it to Snowden's bank, U.S. Bank, which debited Debtor's bank account and credited the Mercantile Bank's Federal Reserve account. The transaction was completed when the Mercantile Bank credited CIC's account.

Snowden contends that CIC's Electronic Funds Transfer ("EFT") was not a negotiable instrument because the EFT was not a signed written instrument. She asserts that CIC has blurred the distinction under the UCC between an "item" and an "instrument," arguing that the fact that an electronic debit entry is an "item" under Article 4 does not make it an "instrument" under Article 3. "Item" under RCW 62A.4-104(a)(9) includes "an instrument or promise or order to pay money handled by a bank for collection or payment." RCW 62A.3-104(b) defines "instrument" as a negotiable instrument, and the Official Comment to this section states

that a "negotiable instrument" is limited to a signed writing that orders or promises payment of money.

CIC argues that this is a distinction without a difference, that the ACH debit entry was merely the <u>means</u> by which CIC presented the negotiable instrument. RCW 62A.3-501(b)(1), quoted above, specifically authorizes presentment by any commercially reasonable means, including electronic communication. The statute does not explicitly require the transmittal of a copy of the check, nor does RCW 62A.4-110(a), also quoted above, but the requirements are that:

> . . . the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

RCW 62A.3-501(b)(2).

The record of the ACH transaction provided by CIC, Exhibit A to this Decision, identifies Snowden's bank's routing number, her account number, her name, a check date, and an amount. It does not specify the check number (2740); in fact, a "0" appears in the space for that number. The check date was stated as "02/19/2009," the date the electronic transaction was initiated--<u>not</u> "12/1/2008," the date written on the check. CIC did not surrender Snowden's check, nor is it apparent how that could be done electronically.

The electronic record does not specifically identify Debtor's check: even if the date were correct, the amount would be insufficient, for Snowden's bank had no way of knowing whether she might have written multiple checks in that amount on that day. It follows that the electronic transfer was not presentment of Snowden's check. As noted, the Agreement allowed CIC either to process the payment as a check

transaction <u>or</u> to "use information from [Debtor's] check to make a one-time electronic funds transfer from [Debtor's] account." CIC chose the latter and made a one-time electronic funds transfer; it did not present the check electronically. One of the consequences of this choice was, apparently, that it rendered Debtor's stop-payment order to her bank ineffective. Another is that the EFT in this instance was not "presentment" as contemplated in Article 3 of the UCC.

This is not to say that an EFT could never be presentment, but it would necessarily have to specify the particular instrument, and could not be some other transaction authorized by the parties' agreement. Although a check might provide the basis and the necessary information for the transaction, there can be no "presentment" without specific identification of the particular instrument, even if surrender could be overlooked.

There is another reason why § 362(b)(11)'s exception may be inapplicable here: as noted above, exceptions to the stay are narrowly construed, <u>Hillis Motors</u>, 997 F.2d at 590, and anything CIC did beyond the statutory requirements of presentation would violate the stay. Arguably, even indorsement of a paper check for deposit into the payee's or holder's account, with attendant warranties, RCW 62A.3-417, is outside the strict requirements of presentment, and thus outside the exception. If, under the contractual provisions governing the ACH system or the rules of that system by which CIC agreed to be bound, any warranties or other actions beyond exhibiting and surrendering the instrument would also seem to fall outside the exception's ambit. But neither the agreements by which CIC joined the ACH system, nor the rules of that system, are in evidence, so that question must await another case.

Because there was here no presentment as defined by the UCC, and thus the transaction was not within the stay exception of § 362(b)(11), I need not address Snowden's contention that CIC could not enforce her check because the underlying debt was dischargeable. See Hines, 198 B.R. at 772. But I will note that the criticism that Hines conflates "discharge" and "dischargeability," and perhaps Hines itself, seems tangential to the central issue: does the automatic stay of § 362(a) take the payee or holder of a debtor's prepetition check out of the category of one "entitled to enforce" and thus eligible to present an instrument under RCW 62A.9-501(a). If so, does § 362(b)(11) eliminate the problem? Or is that criterion simply a reference to the UCC and state law? RCW 62A.3-301 provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument . . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

To the extent entitlement to enforce in the stay relief context contemplates something beyond the identity of the would-be presenter, required by state law, it is not clear why the automatic stay should have any less efficacy than the discharge – both are federal injunctions against collection and enforcement of prepetition obligations. Section 524; see In re Henry, 266 B.R. 457, 468 (Bankr. C.D. Cal. 2001) (automatic stay is a combination of temporary restraining order and preliminary injunction); see also In re McGhan, 288 F.3d 1172, 1179-1180 (9th Cir. 2002) (holding that state courts do not have power to modify either the stay or the discharge injunction). This question also remains for another day and another case.

## IV. CONCLUSION

As CIC did not enforce Snowden's Agreement via presentation of an instrument, the § 362(b)(11) stay exception is inapplicable, and as CIC had notice of Snowden's bankruptcy, CIC intentionally violated the automatic stay. Snowden is entitled to damages. An evidentiary hearing will be set to determine those damages, as well as any resulting from CIC's repeated post-petition contacts with Snowden, and whether punitive damages are appropriate.

**///  – END OF ORDER  – ///**

United States Bankruptcy Judge
(Dated as of Entered on Docket date above)

Served via BNC



**Welcome to Gulf Management's Online ACH**

[Help] [Log Out]

July 2, 2009 2:21 PM CST

Company Name: X40 - CHECK INTO CASH INC

| Home | Transactions | Reports | Processing | Account |

Choose Transaction Type: Select a Transaction
Transaction List Is Alphabetical
[Request Transaction Type]

Account ID: GM1016
User Name: X40

### Transaction (View)

[Duplicate] [Duplicate To Payment Plan]

* Denotes a Required Field

**Bank Information**

| | | | |
|---|---|---|---|
| Bank ABA | 125000105 | Account No. | **Redacted** |

**Check Information**

| | | | |
|---|---|---|---|
| Account Type | Personal Checking | Amount * | 575.00 |
| Check No. | 0 | Reference | 11052 |
| Check Date * | 02/19/2009 | Tran Type | EFT |

**Consumer Information**

| | | | |
|---|---|---|---|
| Last/Company Name * | SNOWDEN | Inhouse Acct. No. | E |
| First Name | RUPANJALI | Home Phone | |
| Address Ln 1 | | Work Phone | |
| Address Ln 2 | | Driver Lic. ST/Exp. | |
| City | | Driver Lic. No. | |
| State/Zip | | | |

**Transaction Information**

| | | | |
|---|---|---|---|
| Tran ID | 684937 | Source | WEB |
| Status | Sent to ACH | Source Date | 02/19/2009 |
| Batch ID | 57977 | Submit Date | 02/19/2009 |
| Submit Count | 1 | Return Date | |
| Payment | 1 of 1 | Return Code | |
| Settle Date | 02/20/2009 | Return Reason | |

[Duplicate] [Duplicate To Payment Plan]

Copyright © 2000-2009 Affirmative Technologies, Inc. All Rights Reserved.
Use of this Web site constitutes acceptance of the Affirmative Technologies User Agreement.

**EXHIBIT A TO DECISION ON MOTION FOR SANCTIONS
RUPANJALI SNOWDEN (09-10318)**

https://www.a...    7/2/2009